NOEL M. COOK, SBN 122777
LINDA JOY KATTWINKEL, SBN 164283
OWEN, WICKERSHAM & ERICKSON, P.C.
455 Market Street, Suite 1910
San Francisco, CA 94105
Telephone: 415-882-3200
Telecopier: 415-882-3232
ncook@owe.com
ljk@owe.com

Attorneys for Plaintiffs,
SANRIO COMPANY, LTD. and
SANRIO, INC.

ORIGINAL
FILED
SEP 28 2007
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

VRW

SANRIO COMPANY, LTD., a Japanese corporation and SANRIO, INC., a California corporation,

Plaintiff,

vs.

TORRI BUTLER TORRES, a North Carolina state resident and POSH.LIFE, an unincorporated entity, dba POSH-LIFE.COM, POSHLIFEBEAUTY.COM, and POSHLIFEBLING.COM, and DOES 1- 10,

Defendants.

C 07 Civil Action No. 5024

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:

(1) Federal Trademark Infringement and Counterfeiting;
(2) Federal Copyright Infringement;
(3) Federal Unfair Competition;
(4) Unfair Competition Under Cal. Prof. Code § 17200 *et seq.*

Demand for Jury Trial

Plaintiffs, Sanrio Company, Ltd. And Sanrio, Inc. (collectively "Sanrio") for their complaint against Defendants Torri Butler Torres and Posh.Life, dba Posh-Life.com, Poshlifebeauty.com and Poshlifebling.com, and Does 1-10, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action to redress violations of the federal trademark laws, 15 U.S.C. §1114, et seq., federal copyright laws, 17 U.S.C. § 501, et seq., federal laws of unfair competition, 15 U.S.C. §1125(a) et seq., as amended, California state law of unfair competition, Cal. Bus. & Prof. Code § 17200 et seq., and common law unfair competition, as the result of

willful and unauthorized use by Defendants of Sanrio's character names, trademarks and designs, as more fully set forth hereinafter. Sanrio seeks injunctive relief restraining infringement by Defendants of Sanrio's names, trademark, and designs, damages as the direct and proximate result thereof, and related relief.

## THE PARTIES

2. Plaintiff Sanrio Co., Ltd. is a corporation organized and existing under the laws of the nation of Japan, with its principal place of business located at 1-6-1 Osaki, Shinagawa ku, Tokyo 141-8603, Japan.

3. Plaintiff Sanrio, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business located at 570 Eccles Avenue, South San Francisco, California 94080. Sanrio, Inc. is a wholly owned subsidiary of Sanrio Co., Ltd.

4. Upon information and belief, Plaintiffs allege that Defendant Torri Butler Torres is a North Carolina resident with a principal place of business at 402 Hickory Meadow Circle, Morrisville, North Carolina 27560, and/or 3449 Singleleaf Lane, Raleigh, NC 27616.

5. Upon information and belief, Plaintiffs allege that Defendant Posh.Life is an unincorporated entity with a principal place of business at 402 Hickory Meadow Circle, Morrisville, North Carolina 27560, and/or 3449 Singleleaf Lane, Raleigh, NC 27616, and, until at least June 2006, with a California address at 646 Beverly Drive, Beverly Hills, CA 90210.

6. Plaintiffs do not know the true names of the individuals, corporations, partnerships or other entities sued and identified herein as Does 1 through 10. Plaintiffs allege that said Defendants are liable to Plaintiffs under the claims for relief set forth below, and request leave of this Court to amend this Complaint when the true names of said Defendants are discovered.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. §§ 1331 and 1338. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue in the Northern District of California is proper pursuant to 28 U.S.C.§ 1391(b) and § 1391©).

## INTRADISTRICT ASSIGNMENT

9. Assignment on a district-wide basis is appropriate under Civil Local Rule 3-2©) because this is an Intellectual Property Action.

## ALLEGATIONS COMMON TO ALL COUNTS

10. Since 1960, Sanrio Co., Ltd. has been engaged in the business of manufacturing, distributing and selling products for use by children and young adults. All of Sanrio Co., Ltd.'s products are marked with the SANRIO trade name and mark. Since 1976, Sanrio, Inc. has been the exclusive United States distributor of the products of Sanrio Co., Ltd. and is currently the exclusive United States master licensee of the rights in and to the SANRIO trademarks and copyrights.

**Plaintiffs' HELLO KITTY Character**

11. Sanrio is the creator and owner of the famous HELLO KITTY character, as well as other characters, as depicted in Exhibit 1.

12. Since 1976, most of Sanrio's merchandise marketed in the U.S. has displayed the HELLO KITTY name and design on the products and product packaging.

<u>Copyright Registrations</u>

13. Sanrio Co., Ltd. owns over 30 U.S. Certificates of Copyright Registration for artwork depicting the HELLO KITTY character, including the following Registration Nos.: VA 130-420, VA 1-303-874 and Vau 684-322 and VA 1-342-775 . Copies of these copyright registrations, and relevant excerpts of deposit specimens thereto, comprise Exhibit 2.

<u>Registered Trademarks</u>

14. Sanrio owns several U.S. Trademark registrations, including incontestable U.S. Trademark Registration Nos. 1,200,083 and 1,277,721 for the design trademark depicting the head of the HELLO KITTY character (the "HELLO KITTY Design"). Copies of these trademark registrations comprise Exhibit 3.

15. Sanrio owns incontestable U.S. Trademark Registration Nos. 1,215,436 and 1,279,486, among others, for the word mark HELLO KITTY (the "HELLO KITTY Name"). Copies of these trademark registrations comprise Exhibit 4.

16. Since as early as January 1, 1976, Plaintiffs have used the HELLO KITTY Name and Design marks in the United States in connection with the products listed in the foregoing registrations, including, *inter alia*, cosmetics, vanity cases containing cosmetics, colognes, perfumes, jewelry, cosmetic cases sold empty, business card cases, hand mirrors, hair brushes, calculators, cameras, telephones, and decorative seals and stickers.

Common Law Trademarks

17. Since as early as January 1, 1976, Plaintiffs have used, and thereby own common law trademark rights in and to, the HELLO KITTY Name and Design marks in the U.S. in connection with thousands of products and services for children and young adults, including, *inter alia*, cell phone covers/ face plates; iPod cases; personal digital assistant ("PDA") covers/ face plates (e.g., sidekicks); compact mirrors; cosmetic cases; business card cases; cigarette cases; cell phones; perfume/cologne bottles; cameras; computer mouses; baby shoes; baby pacifiers; baby grooming sets; baby bottles; spoons; hair brushes; flip flops/sandals; key fobs; baby nail clippers; car license plate covers, and customization crystal decoration services for such goods. True and correct photocopies of photographs and digital scans of such genuine Sanrio products comprise Exhibit 5.

18. Sanrio's HELLO KITTY Name and Design marks are inherently distinctive and, in any event, have acquired distinctiveness through continuous and widespread use of the mark in the U.S. and worldwide.

**Public Recognition of Plaintiffs' HELLO KITTY Character**

19. The success of Sanrio's entire business stems from the value to its customers, primarily children and young people, of products featuring Sanrio's internationally popular signature characters, including HELLO KITTY. Sales in the U.S. alone of Sanrio's HELLO KITTY character merchandise, including wholesale and retail, exceeded $400 million last year.

20. Sanrio spends close to $2 million annually in the U.S. to promote its character products. In addition, Sanrio's character products are often the subject of national media stories. Representative examples of such media coverage comprise Exhibit 6.

21. Genuine Sanrio HELLO KITTY products are sold in the U.S. at authorized Sanrio retailers, including Target and Nordstrom, licensed Sanrio boutiques, corporate theme stores, on-line and through mail order catalogs.

**Defendant's Infringing Activities**

22. In or around May 2006, Sanrio became aware that Defendants, through their Posh.Life websites, <www.posh-life.com>, <www.poshlifebeauty.com> and/or <www.poshlifebling.com> (the "Posh.Life websites"), as well as through some third-party sites, were displaying and offering for sale various counterfeit HELLO KITTY cell phone and PDA covers as well as offering customization services for cell phone and PDA decoration including various unauthorized HELLO KITTY designs. Copies of representative screen-shots from the Posh.Life websites from May 2006 comprise Exhibit 7. Defendants were not and are not authorized manufacturers, distributors, licensees or importers of Sanrio merchandise.

23. On or about June 7, 2006, Sanrio, though its counsel, sent Defendants a letter to the California and North Carolina addresses listed in the domain name registrations for the Posh.Life websites, informing them of their violation of Sanrio's copyright and trademark rights and demanding Defendants immediately cease and desist all creation, display, promotion and sale of their various unauthorized and/or counterfeit items.

24. On or about June 8, 2006, Sanrio, through its counsel, received an email response from Defendant Torri Torres on behalf of Defendant Posh.Life, acknowledging receipt of Sanrio's June 7, 2006 letter and indicating that pages featuring the HELLO KITTY items in question had been removed from the Posh.Life website and would not be put up again.

25. Also on or about June 7, 2006, Sanrio sent take-down notices under the Digital Millennium Copyright Act, 17 U.S.C. § 512( c), to two Internet service providers (ISP) which, to the best Sanrio could determine, were hosting the Posh.Life websites, including Yahoo!, which

was hosting the store functions on <www.poshlifebeauty.com>. Yahoo! responded on June 8, 2006, with a form email message stating that appropriate action would be taken. The other ISP responded that it did not host the Posh.Life websites.

26. On or about June 21, 2006, Sanrio, through its counsel, became aware that despite assurances to the contrary, Defendants continued to display and offer for sale the various unauthorized and/or counterfeit HELLO KITTY cell phone and PDA covers and related customization services through the Posh.Life website.

27. On or about June 21, 2006, Sanrio, though its counsel, sent an email to Defendants requesting compliance, pursuant to Defendants' assurances of June 8, 2006, with Sanrio's demands. On the same date, Sanrio sent a second DMCA take-down notice to Yahoo!.

28. On or about June 21, 2006, Sanrio, through its counsel, received an email response from Defendant Torri Torres on behalf of Defendant Posh.Life, indicating that Defendants no longer offered for sale infringing and/or counterfeit HELLO KITTY items, but indicated Defendants had continued displaying images of such items on the Posh.Life websites and expressed a desire to continue such display.

29. On or about June 22, 2006, Sanrio, through its counsel, informed Defendants that continued unauthorized display of the infringing and/or counterfeit HELLO KITTY items constituted a violation of Sanrio's rights and again demanded that such images be promptly removed from the Posh.Life websites.

30. On or about June 22, 2006, Yahoo! responded to the second DMCA notice with another form email message stating that appropriate action would be taken.

31. On or about July 21, 2006, Sanrio became aware that Defendants continued to display and offer for sale the various unauthorized and counterfeit HELLO KITTY cell phone and PDA covers and related customization services through the Posh.Life websites.

32. On or about July 24, 2006, Sanrio, through its counsel attempted to send another cease and desist letter to Defendants at their California address.  The July 24, 2006 letter was returned with an indication that the California address was no longer valid for Defendants.

33.  Sanrio continued to monitor the Posh.Life websites for approximately a month and determined that Defendants continued and had seemingly expanded their infringing activities to include not only cell phone and PDA covers but also customization services for an expanded scope of items, including cosmetic cases, business card cases and hair brushes. Copies of representative screen-shots from the Posh.Life website from August 2006 comprise Exhibit 8. Therefore, on or about August 18, 2006, Sanrio, through its counsel, sent a follow-up letter to Defendants at the email address through which Torri Torres had previously communicated, informing Defendants that in light of prior correspondence, Defendants' continued display and offering for sale of the unauthorized and counterfeit HELLO KITTY items at issue constituted willful infringement and again demanding Defendants immediately cease and desist their infringing activities. Also on or about August 18, 2006, Sanrio sent a third DMCA take-down notice to Yahoo!.

34.  On or around August 19, 2006, Sanrio, through its counsel, received an email response from Defendant Torri Torres on behalf of Defendant Posh.Life, again indicating that Defendants no longer offered for sale infringing and/or counterfeit HELLO KITTY items and asserting that Defendants' intention was to remove all unauthorized images of the infringing and/or counterfeit HELLO KITTY items.

35.  On or about August 23, 2006, Yahoo! responded to the third DMCA take-down notice with another form email message stating that appropriate action had been taken.

36.  In or around September 2006, Sanrio determined that Posh.Life was offering at least seven (7) infringing and/or counterfeit HELLO KITTY items and/or related customization services, including Hello Kitty Cingular 8125 Pocket PC, Apple iPod Nano Swarovski Crystal Case (customizable with HELLO KITTY design); Swarovski Crystal Apple iPod Case (customizable with HELLO KITTY design); Swarovski Crystal Sidekick (customizable with HELLO KITTY design); Swarovski Crystal Business Card or Credit Card Case (customizable with HELLO KITTY design); and Swarovski Crystal Cigarette Case (customizable with HELLO KITTY design), all ranging in price between $165.00 and $650.00. Copies of representative

screen-shots from the Posh.Life website from September 2006 comprise Exhibit 9.

37. In or around mid-September 2006, Sanrio attempted to make a purchase of representative samples of the infringing and/or counterfeit HELLO KITTY items displayed and offered through the Posh.Life website.

38. On or about September 18, 2006, Sanrio's representative received an email response from Defendant Torri Torres on behalf of Defendant Posh.Life, indicating that Posh.Life was not permitted to make HELLO KITTY items and that such items should have been removed from the Posh.Life websites.

39. Sanrio continued to monitor the Posh.Life websites through the end of September 2006 and determined that Defendants had seemingly ceased their infringing activities.

40. In or around June 2007, Sanrio became aware that Posh.Life was again displaying and apparently offering for sale various counterfeit HELLO KITTY items. To date such items include cell phone covers/ face plates; iPod cases; personal digital assistant ("PDA") covers/ face plates (e.g., sidekicks); compact mirrors; cosmetic cases; business card cases; cigarette cases; cell phones; perfume/cologne bottles; cameras; computer mouses; baby shoes; baby pacifiers; baby grooming sets; baby bottles; spoons; hair brushes; flip flops/sandals; key fobs; baby nail clippers; car license plate covers, and customization crystal decoration services for such goods. Copies of representative recent screen-shots from the Posh.Life websites comprise Exhibit 10.

41. In or around August 2007, Sanrio confirmed that Defendants are continuing to sell and ship counterfeit HELLO KITTY items via online orders placed through their websites, including to purchasers within the Northern District of California. Sanrio also determined that the Posh.Life websites were apparently being hosted by different ISP's.

42. On or about September 6, 2007, Sanrio, through its counsel, sent DMCA take-down notices to two ISP's which, as best it could determine, were hosting the Posh.Life websites. On that same day, one of the ISP's, GoDaddy.com, responded that it was not hosting the sites. On September 12, 2007, the other ISP, Websitedynamics.com, responded that it had notified their customer and she had removed the disputed images from

<www.poshlifebling.exactwebsites.com>. However, at least one image of a HELLO KITTY item remains on Defendants' Posh.Life websites. A screen-shot from the current Posh.Life websites showing this image comprises Exhibit 11.

43. On or about September 14, 2007, Sanrio discovered that Defendants have been displaying an image of a counterfeit HELLO KITTY item as the signature image on their blog at <www.poshlifebeauty.bravejournal.com>, apparently since at least January 11, 2007. The text of said blog includes the statement "After that, I designed my Hello Kitty phone. Tthe [sic] only time I change it is when I buy a new phone - and guess what design goes right back on it . . ." The blog includes a link to the Posh.Life websites. Copies of current and archived entries on Defendants' blog comprise Exhibit 12.

44. On or about September 14, 2007, Sanrio also discovered that Defendants are displaying images of their counterfeit HELLO KITTY items on the online auction sites eBay and iOffer. Copies of representative screen-shots from these sites comprise Exhibit 13.

45. On or about September 14, 2007, Sanrio, through its counsel, sent DMCA take-down notices to the ISP which, as best it could determine, hosts Defendants' blog, and to the auction sites. To date, the infringing images appear to have been removed from those third-party sites.

46. Defendants are continuing and likely to expand unauthorized use of Sanrio's HELLO KITTY Name and Design marks on their own websites and third-party sites, and, unless restrained by this court, will continue to unfairly compete with Sanrio by displaying, marketing and selling counterfeit HELLO KITTY products.

**FIRST CLAIM FOR RELIEF**

**Counterfeiting and Infringement of Federally Registered Trademarks
Under 15 U.S.C. §1114 et seq.**

47. Sanrio restates and reavers the allegations of paragraphs 1 through 46, inclusive.

48. The incontestable U.S. registered trademarks, namely, the face of HELLO KITTY design mark and the word mark HELLO KITTY, (the "Registered Trademarks") as described above, have been extensively used, advertised, and promoted through the United States and the

world in connection with the Sanrio character products as identified above.

49.     The Registered Marks are inherently distinctive. Morever, they are conclusively distinctive because the registrations are incontestible. As a result of Sanrio's use, advertisement and promotion of Sanrio's Registered Trademarks, each of these trademarks have become well and favorably known throughout the United States and the world as identifying Sanrio and its products. Sanrio has developed exceedingly valuable goodwill with respect to all of its Registered Trademarks.

50.     Upon information and belief, Defendants have knowingly, willfully and intentionally created, imported, advertised, promoted, displayed, offered for sale and/or sold infringing counterfeit products bearing identical, nearly identical and/or confusingly similar copies of Sanrio's Registered Trademarks, including without limitation the HELLO KITTY Name mark; and identical and/or nearly identical copies of the HELLO KITTY Design mark, as identified above and depicted in Exhibits 7 through 13 hereto (the "Counterfeit Trademarks").

51.     Defendants' use of each of the Counterfeit Trademarks on its products is likely to cause members of the relevant public and trade to believe that Defendants' products are provided by or in affiliation with or under the sponsorship or approval of Sanrio when used in connection with the identical, substantially similar, or related goods.

52.     Upon information and belief, Defendants willfully selected, adopted and/or used the Counterfeit Trademarks on their goods with knowledge of the valuable goodwill and business reputation associated therewith, and with intent to confuse, mislead, and deceive the public into believing Defendants' goods come from Sanrio or are in some manner associated with, approved or endorsed by Sanrio.

53.     Upon information and belief, unless restrained by this Court, Defendants will continue to infringe Sanrio's Registered Trademarks by using the Counterfeit Trademarks on Defendants' goods.

54.     By their wrongful acts, Defendants, unless restrained by this Court, will cause serious and irreparable harm to Sanrio.

55. As a direct and proximate result thereof, Sanrio has been and continues to be damaged in an amount to be ascertained, but believed to be at least $150,000.

56. Sanrio has no adequate remedy at law.

57. Defendants' conduct constitutes an exceptional case justifying an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**SECOND CLAIM FOR RELIEF**

**Federal Copyright Infringement Under 17 U.S.C. §101 et seq.**

58. Sanrio restates and reavers the allegations of paragraphs 1 through 57, inclusive.

59. Since their introduction, artwork comprising Sanrio's copyrighted HELLO KITTY character designs (the "Copyrighted Designs") has been published in catalogs and promotional materials, and printed on or embodied by Sanrio character products and packaging, millions of which have been distributed worldwide and in the United States.

60. At all times relevant hereto, all or substantially all copies of Sanrio's Copyrighted Designs made by Sanrio or under its authority or license in the United States and elsewhere have been manufactured in strict conformity with the Copyright Act of the United States and all other laws governing copyright in the areas where the items have been published.

61. At all times relevant hereto, all or substantially all of Sanrio's genuine products bearing the Copyrighted Designs have been marked with copyright notices claiming copyright in Sanrio's name.

62. Sanrio's Copyrighted Designs constitute original artwork created by Sanrio.

63. Sanrio's original Copyrighted Designs affixed on or comprising Sanrio's character products represent copyrightable subject matter under the laws of the United States.

64. At all times relevant herein, Sanrio has been and still is the owner of the copyrights in and to the Copyrighted Designs. Sanrio has conveyed no copyright interest in the Copyrighted Designs to Defendants.

65. On information and belief, Defendants had access to Sanrio's Copyrighted Designs, which are extensively marketed worldwide, including on Sanrio's website,

<www.sanrio.com>.

66. The Counterfeit Items imported, displayed, marketed and/or sold by Defendants, as identified above and depicted in Exhibits 7 through 13 hereto, bearing identical or strikingly similar copies of Sanrio's character artwork known as HELLO KITTY, constitute willful and unauthorized distribution, copying and misappropriation of substantial or entire portions of the designs contained in, and original to, Sanrio's Copyrighted Designs.

67. Upon information and belief, Defendants intentionally and willfully manufactured, displayed, marketed, sold and/or distributed products bearing copies of Sanrio's Copyrighted Designs and/or copied such design, without authority of Plaintiffs or their agents.

68. As a direct and proximate result thereof, Sanrio has been and continues to be damaged in an amount to be ascertained, but believed to be at least $150,000.

69. Sanrio has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**Federal Unfair Competition and Common Law Trademark Infringement Under 15 U.S.C. § 1125(a)**

70. Sanrio restates and reavers the allegations of Paragraphs 1 through 69, inclusive.

71. Sanrio's common law word and design marks, namely, the name and image of HELLO KITTY (the "Common Law Trademarks"), are inherently distinctive. Moreover, as described above, the Common Law Trademarks have been extensively used, advertised, and promoted through the United States, and the world for over thirty (30) years in connection with Sanrio's products.

72. As a result of Sanrio's use, advertisement, and promotion of Sanrio's Common Law Trademarks, each of these trademarks have become well and favorably known throughout the United States and world as identifying Sanrio and its products. Sanrio has developed exceedingly valuable goodwill with respect to all of its Common Law Trademarks.

73. Upon information and belief, Defendants have imported, advertised, promoted, displayed, offered for sale, and/or sold infringing products bearing identical, or nearly identical copies of Sanrio's Common Law Trademarks, as identified above and depicted in Exhibits 7

through 13 hereto (the "Counterfeit Trademarks").

74. Defendants' use of each of the Counterfeit Trademarks is likely to cause members of the relevant public and trade to believe that the products sold bearing the Counterfeit Trademarks are provided by or in affiliation with or under the sponsorship or approval of Sanrio in light of the confusing similarity between the Counterfeit Trademarks and Sanrio's genuine Common Law Trademarks when used in connection with the identical, substantially similar, or related goods.

75. Upon information and belief, Defendants selected, adopted and/or used the Counterfeit Trademarks with knowledge of Sanrio's Common Law Trademarks, and the valuable goodwill and business reputation associated therewith and with intent to confuse, mislead, and deceive the public into believing Defendants' goods come from Sanrio or are in some manner associated with, approved or endorsed by Sanrio.

76. Upon information and belief, unless restrained by this Court, Defendants will continue to infringe Sanrio's genuine Common Law Trademarks by its use of the Counterfeit Trademarks.

77. By their wrongful acts, Defendants, unless restrained by this Court, will cause serious and irreparable harm to Sanrio.

78. As a direct and proximate result thereof, Sanrio has been and continues to be damaged in an amount to be ascertained, but believed to be at least $150,000.

79. Sanrio has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Unfair Competition Under Cal. Bus. & Prof. Code § 17200

80. Sanrio restates and reavers the allegations of paragraphs 1 through 79, inclusive.

81. Defendants' above-averred actions constitute unlawful, unfair, and fraudulent business practices and unfair, deceptive, misleading, and false advertising in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

82. By their wrongful acts, Defendants, unless restrained by this Court, will cause

serious and irreparable harm to Sanrio.

83. As a direct and proximate result thereof, Sanrio has been and continues to be damaged in an amount to be ascertained, but believed to be at least $150,000.

84. Sanrio has no adequate remedy at law.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. That Defendants, Defendants' agents, employees, and licensees, and all persons or entities in active concert or participation with any of them who receive notice of the Court's Order, be preliminarily and permanently enjoined from:

    A. Manufacturing, causing to be manufactured, importing, marketing, promoting, displaying, advertising, distributing, selling, and/or otherwise disposing of any products that incorporate, reflect, or contain any unauthorized use of Sanrio's Copyrighted Designs, Registered Trademarks, and/or Common Law Trademarks, and/or infringing said trademarks and copyrights in any manner;

    B. Otherwise infringing any of Plaintiffs' copyrights or trademarks;

    C. Otherwise competing unfairly with Plaintiffs.

2. That Defendants, their agents, employees, and licensees, and all those acting under its direction and pursuant to its control, be directed to deliver up for destruction all infringing and/or counterfeit products, and other matter employed in the manufacture, distribution and sale of such infringing and/or counterfeiting products.

3. That Defendants be required to pay Sanrio:

    A. Any and all profits made by Defendants as a result of the aforesaid infringements, together with interest thereupon in an amount presently unknown;

    B. Sanrio's damages in an amount presently unknown but believed to be at least $150,000, together with interest;

    C. Statutory damages in an amount not more than $1,000,000 per counterfeit mark, as provided under and pursuant to 15 U.S.C. §1117(c);

    D. Three times the profits and damages pursuant to 15 U.S.C. § 1117(b); and

E. Statutory damages in the amount of $150,000 per copyright infringement, the maximum allowable as provided under and pursuant to 17 U.S.C. § 504(c), as amended.

4. That Defendants be required to pay Sanrio the costs of this action, together with Sanrio's reasonable attorneys' fees, under 17 U.S.C. 505 and 15 U.S.C. §1117(a).

6. That Plaintiff be awarded any other relief as this Court may deem appropriate to prevent the public from deriving the erroneous impression that Defendants are associated or connected with Sanrio or that any goods or services provided, promoted or sold by Defendants are authorized by Sanrio or are related in any way to Sanrio or its goods or services.

7. That the Court award Sanrio such other and further relief as this Court shall deem just and proper.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: 9-27-07

By ______________________
Noel M. Cook
Linda Joy Kattwinkel

Attorneys For Plaintiff,
SANRIO COMPANY, LTD. and
SANRIO, INC.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial of all issues in the above-captioned action which are triable to a jury.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: 9-27-07

By ______________________
Noel M. Cook
Linda Joy Kattwinkel

Attorneys For Plaintiff,
SANRIO COMPANY, LTD. and
SANRIO, INC.

## CERTIFICATION RE INTERESTED PARTIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: 9-27-07

By ____________________
Noel M. Cook
Linda Joy Kattwinkel

Attorneys For Plaintiff,
SANRIO COMPANY, LTD. and
SANRIO, INC.

S:\1Clients\SANRI\LITIGA\70014\Posh.Life Complaint ljk.wpd

# EXHIBIT 1






Little Twin Stars
© 1976, 2005 SANRIO CO., LTD.

Dear Daniel
© 1999, 2005 SANRIO CO., LTD.

MY MELODY
© 1976, 2005 SANRIO CO., LTD.

KEROPPI®
© 1988, 2005 SANRIO CO., LTD.

minna no tābō
© 1984, 2005 SANRIO CO., LTD.

Badtz-MaRu
© 1993, 2005 SANRIO CO., LTD.

PEKKLE
© 1989, 2005 SANRIO CO., LTD.

CHARMMY-KITTY
© 2004, 2005 SANRIO CO., LTD.

Chi Chai Monchan
© 2004, 2005 SANRIO CO., LTD.

Chococat
© 1996, 2005 SANRIO CO., LTD.

cinnamoroll
© 2002, 2005 SANRIO CO., LTD.

TUXEDO SAM
© 1978, 2005 SANRIO CO., LTD.

Chibimaru
© 2003, 2005 SANRIO CO., LTD.

FROOLIE MEW
© 2004, 2005 SANRIO CO., LTD.

Pochacco
© 1998, 2005 SANRIO CO., LTD.

Deery-Lou
© 2002, 2005 SANRIO CO., LTD.

SWEETCORON
© 1998, 2005 SANRIO CO., LTD.

U·SĀ·HĀ·NĀ
© 2001, 2005 SANRIO CO., LTD.

SHINKANSEN
© 1999, 2005 SANRIO CO., LTD.

sugarbunnies
© 2005 SANRIO CO., LTD.

PANDAPPLE
© 2005 SANRIO CO., LTD.