1  NOEL M. COOK, SBN 122777
   LINDA JOY KATTWINKEL, SBN 164283
2  OWEN, WICKERSHAM & ERICKSON, P.C.
   455 Market Street, Suite 1910
3  San Francisco, CA  94105
   Telephone: 415-882-3200
4  Telecopier: 415-882-3232
   ncook@owe.com
5  ljk@owe.com

6  Attorneys for Plaintiffs,
   SANRIO COMPANY, LTD. and
7  SANRIO, INC.

8

                    UNITED STATES DISTRICT COURT
9
              IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11 SANRIO COMPANY, LTD., a Japanese    )   Civil Action No. C 07-05024 VRW
   corporation and SANRIO, INC., a     )
12 California corporation,             )   PLAINTIFFS' CASE MANAGEMENT
                                       )   STATEMENT AND PROPOSED ORDER
13                Plaintiff,           )
                                       )   Date:   January 3, 2008
14       vs.                           )   Time:  3:30 p.m.
                                       )   Courtroom 6, 17th Floor, San Francisco
15 TORRI BUTLER TORRES, a North        )
   Carolina state resident and POSH.LIFE, an )
16 unincorporated entity, dba POSH-    )
   LIFE.COM, POSHLIFEBEAUTY.COM,       )
17 and POSHLIFEBLING.COM, and DOES     )
   1- 10,                              )
18                                     )
                  Defendants.          )
19 _____ )

20       This is an action to redress violations of the federal trademark laws, 15 U.S.C. §1114, et

21 seq.,  federal copyright laws, 17 U.S.C. § 501, et seq., federal laws of unfair competition, 15

22 U.S.C. §1125(a) et seq., as amended, California state law of unfair competition, Cal. Bus. &

23 Prof. Code § 17200 et seq., and common law unfair competition, as the result of allegedly willful

24 and unauthorized use by Defendants of Sanrio's famous HELLO KITTY character name,

25 trademark and copyrighted artwork.

26       Defendants to date are proceeding *pro se*, and to date have not filed an Answer or other

27 responsive pleading. Plaintiffs' counsel initially contacted Ms. Torres to seek her participation in

28

1    a joint case management statement. However, it became apparent that Ms. Torres could not

2    meaningfully participate in preparing a joint statement. Plaintiffs believe it is not prudent to file a

3    joint statement under these circumstances. Plaintiffs' counsel have suggested several times to

4    Defendant Ms. Torres that she hire counsel. The parties have engaged in limited settlement talks.

5        Given the posture of the case, Plaintiffs suggest that the Case Management Conference be

6    continued for ninety days.

7    1.    Jurisdiction and Service:

8        This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28

9    U.S.C. §§ 1331 and 1338. This court has supplemental jurisdiction over Plaintiff's claims

10   pursuant to 28 U.S.C. § 1367. Venue in the Northern District of California is proper pursuant to

11   28 U.S.C.§ 1391(b), § 1392 and § 1400(a).

12       On October 11, 2007, Plaintiffs served Defendants with all appropriate documents

13   including the summons, complaint, and order setting the Case Management Conference and

14   ADR deadlines. Defendants have confirmed their receipt thereof. No parties remain to be served.

15   2.    Facts:

16       Plaintiff Sanrio Co., Ltd. is a Japanese corporation. Since 1960, Sanrio Co., Ltd. has been

17   engaged in the business of manufacturing, distributing and selling products for use by children

18   and young adults.  Plaintiff Sanrio, Inc. is a wholly owned subsidiary of Sanrio Co., Ltd. located

19   in South San Francisco, California. Since 1976, Sanrio, Inc. has been the exclusive United States

20   distributor of the products of Sanrio Co., Ltd. and is currently the exclusive United States master

21   licensee of the rights in and to the SANRIO trademarks and copyrights.

22       Sanrio Co., Ltd. created the famous HELLO KITTY character. Since 1976, most of

23   Sanrio's merchandise has displayed the HELLO KITTY name and design on the products and

24   product packaging. Sanrio Co., Ltd. owns over 30 U.S. copyright registrations for artwork

25   depicting HELLO KITTY, as well as numerous U.S. trademark registrations for the name

26   HELLO KITTY and the design mark comprising the face of HELLO KITTY. HELLO KITTY is

27   one of the most popular children's characters. Sales in the U.S. alone of Sanrio's genuine

28

1  HELLO KITTY character merchandise exceeded $400 million last year. Sanrio's HELLO

2  KITTY products are frequently knocked-off by counterfeiters. Sanrio expends significant

3  resources policing infringers.

4       Plaintiffs believe that Defendant Torri Butler Torres is a North Carolina resident. She is

5  the sole proprietor of Defendants Posh.Life, <posh-life.com>, <poshlifebeauty.com>, and

6  <poshlifebling.com> (collectively, "Posh.Life"). Posh.Life is an internet-based business which

7  manufactures, displays and sells personal accessories decorated with crystals (commonly known

8  as "bling") online.

9       In May 2006, Plaintiffs (collectively, "Sanrio") became aware that Posh.Life, through its

10  own websites  well as through some third-party sites, was displaying and offering for sale various

11  counterfeit HELLO KITTY cell phone and PDA covers as well as offering customization

12  crystalizing services featuring HELLO KITTY designs. Sanrio, though its counsel, sent a cease

13  and desist letter to the California and North Carolina addresses listed in the domain name

14  registrations for the Posh.Life websites. Sanrio also sent take-down notices under the Digital

15  Millennium Copyright Act, 17 U.S.C. § 512( c) ("DMCA"), to Internet service providers (ISP)

16  which, to the best Sanrio could determine, were hosting the Posh.Life websites, including

17  Yahoo!. Ms. Torres responded, stating that pages featuring the HELLO KITTY items in question

18  had been removed from the Posh.Life website and would not be put up again. Yahoo! responded

19  with a form email message stating that appropriate action would be taken.

20       About one month later in July, 2006, Sanrio became aware that Posh.Life continued to

21  display and offer for sale the various unauthorized HELLO KITTY cell phone and PDA covers

22  and related customization services. Sanrio sent another cease and desist message to Ms. Torres

23  by email, as well as a second DMCA take-down notice to Yahoo!. Ms. Torres responded by

24  acknowledging that the unauthorized HELLO KITTY items were still displayed, but asserted that

25  Defendants no longer offered them for sale. Sanrio again told Ms. Torres that continued

26  unauthorized display of these items constituted infringement, and again demanded their removal.

27  Yahoo! responded to the second DMCA notice with another form email message stating that

28

1   appropriate action would be taken.

2       A month later, in July 2006, Sanrio became aware that the unauthorized HELLO KITTY

3   items and customization services remained on the Posh.Life websites. Sanrio attempted to send

4   another cease and desist letter to Defendants at their California address.  The letter was returned

5   with an indication that the California address was no longer valid. Sanrio continued to monitor

6   the Posh.Life websites for approximately a month and determined that Ms. Torres continued and

7   had seemingly expanded the infringing activities to include customization services for more

8   items. In August 2006, Sanrio sent a follow-up cease and desist letter to Ms. Torres, and a third

9   DMCA take-down notice to Yahoo!. Ms. Torres responded, again stating that she no longer

10  offered for the items for sale and asserted that she intended to remove all unauthorized images of

11  the infringing and/or counterfeit HELLO KITTY items. Yahoo! responded to the third DMCA

12  take-down notice with another form email message stating that appropriate action had been

13  taken.

14      In September 2006, Sanrio determined that Posh.Life was offering at least seven

15  counterfeit HELLO KITTY items and/or related customization services, ranging in price between

16  $165.00 and $650.00.  Sanrio attempted to make a purchase of representative samples through

17  the Posh.Life website. Sanrio's representative received an email response from Ms. Torres

18  stating that Posh.Life was not permitted to make HELLO KITTY items and that such items

19  should have been removed from the site. Sanrio continued to monitor the Posh.Life websites

20  through the end of September 2006, and determined that Ms. Torres had seemingly ceased the

21  infringement.

22      However, in June 2007, Sanrio became aware that Posh.Life was again displaying and

23  apparently offering for sale an expanded selection of at least nineteen counterfeit crystalized

24  HELLO KITTY items, including baby pacifiers covered in rhinestones that clearly presented a

25  choking hazard. In August 2007, Sanrio confirmed that Ms. Torres was continuing to sell and

26  ship counterfeit HELLO KITTY items via online orders, including a rhinestone-covered baby

27  pacifier sold to Sanrio's representative within the Northern District of California. Sanrio also

28

determined that the Posh.Life websites were apparently being hosted by different ISP's. Sanrio sent DMCA take-down notices to the new ISPs. One ISP responded that it had notified their customer and she had removed the disputed images. However, at least one image of a HELLO KITTY item remained on the Posh.Life websites.

Around this same time, Sanrio discovered that Ms. Torres had been displaying an image of a counterfeit HELLO KITTY item as the signature image on her blog site, apparently since at least January 11, 2007. The blog includes a link to the Posh.Life websites. Sanrio also discovered that Ms. Torres was displaying images of her counterfeit HELLO KITTY items on the online auction sites eBay and iOffer. Sanrio sent DMCA take-down notices to the ISP for the blog site and the auction sites. To date, the infringing images appear to have been removed from those third-party sites. In light of the above pattern of repeated postings, this lawsuit was filed to prevent continued infringements.

In her correspondence with Plaintiffs, Ms. Torres contends that she has actually sold only two HELLO KITTY items, and that she did not make those items; rather she had purchased them from a third party vendor on eBay. Ms. Torres further asserts that she has destroyed the remaining HELLO KITTY items in her possession; that she does not have any sales records, and that she cannot get access to the sales records for her Posh.Life store while it was hosted by Yahoo!  Plaintiffs have evidence discrediting Mr. Torres' claims. Plaintiffs believe that Ms. Torres has made and sold numerous unauthorized HELLO KITTY items despite repeated cease and desist letters.

3.     Legal Issues:

Plaintiffs allege that Defendants' unauthorized display, offering for sale and sale of the crystalized HELLO KITTY products and customized crystalizing services constitutes willful infringement of the Sanrio's copyright, trademark and trade dress rights in the HELLO KITTY name and image, in violation of federal copyright law and federal and state trademark law, and federal and state laws of unfair competition. Ms. Torres asserts that the infringement was not willful.

4.    Motions:

No motions have been filed to date. Plaintiffs request that the court set an appropriate deadline for such filing in consideration of Defendants' *pro se* status, and anticipate a motion for default judgment in the event Defendants fail to file a responsive pleading. Plaintiffs anticipate filing a motion for summary judgment following limited discovery.

5.    Amendment of Pleadings:

Defendants have not timely filed an Answer or other responsive pleading. At this time, Plaintiffs do not anticipate a need to amend the pleadings. Depending upon the nature of Defendants' responsive pleading, Plaintiffs may want to amend. Also,  recognizing that information obtained during discovery may uncover potential new issues or parties, Plaintiffs may want to amend to add new defendants.

6.    Evidence Preservation:

Plaintiffs and their counsel have discussed preservation of electronic and non-electronic evidence.

7.    Disclosures:

In light of Defendants' current *pro se* status and failure to appear, the parties have not yet exchanged initial disclosures.

8.    Discovery:

No discovery has been taken to date. Plaintiffs do not anticipate a need to limit or modify discovery rules.  In light of Defendants' current *pro se* status and failure to appear, the parties have not yet met and conferred pursuant to Fed. R. Civ. P. 26(f).

9.    Class Actions:

Not applicable.

10.    Related Cases:

Plaintiffs are not aware of any related cases.

11.    Relief:

Plaintiff seeks the following relief:

1    A.    Injunctive relief: enjoining Defendants from manufacturing, displaying, offering

2    for sale or selling any items bearing the HELLO KITTY name or image, or otherwise using the

3    HELLO KITTY name or mark; otherwise infringing any of Plaintiffs' copyrights or trademarks;

4    otherwise competing unfairly with Plaintiffs; and requiring Defendants to deliver up for

5    destruction all infringing products, and other matter employed in the manufacture, distribution

6    and sale of infringing products.

7    B.    That Defendants be required to pay Sanrio: Defendants' profits from the

8    infringements, together with interest thereupon in an amount presently unknown; Sanrio's

9    damages in an amount presently unknown but believed to be at least $150,000, together with

10    interest; statutory damages in an amount not more than $1,000,000 per counterfeit mark, as

11    provided under and pursuant to 15 U.S.C. §1117( c); three times the profits and damages

12    pursuant to 15 U.S.C. § 1117(b); and statutory damages in the amount of $150,000 per copyright

13    infringement, the maximum allowable as provided under and pursuant to 17 U.S.C. § 504( c), as

14    amended.

15    C.    That Defendants be required to pay Sanrio the costs of this action, together with

16    Sanrio's reasonable attorneys' fees, under 17 U.S.C. 505 and 15 U.S.C. §1117(a).

17    12.    Settlement and ADR:

18    The parties have engaged in some settlement discussions. Plaintiffs do not believe

19    Defendants' factual assertions regarding the scope of infringing sales are credible. Plaintiffs need

20    to obtain accurate records of Defendants' sales in order to determine an appropriate settlement

21    amount. It appears that Plaintiffs will need to subpoena Yahoo! for such records.

22    Plaintiffs consent to court-ordered mediation.

23    13.    Consent to Magistrate:

24    Plaintiffs consent to have a Magistrate Judge conduct all further proceedings including

25    trial and entry of judgment.

26    14.    Other References:

27    Not applicable.

28

---

15.   Narrowing of Issues:

Plaintiffs believe the issues can be narrowed or completely resolved by dispositive motions once limited discovery has been conducted.

16.   Expedited Schedule:

Plaintiffs prefer that the case not be handled on an expedited basis in order to allow time for settlement negotiations.

17.   Scheduling:

Plaintiffs request the following schedule, with the understanding that adjustments may be requested if rendered necessary by timing of the mediation or other matters that may impact scheduling:

| | |
|---|---|
| Fact discovery cut-off: | August 15, 2008 |
| Expert disclosure: | September 19, 2008 |
| Rebuttal expert reports due: | October 17, 2008 |
| Expert discovery cut-off: | November 14, 2008 |
| Dispositive motions hearing: | January 17, 2008 |
| Trial: | March 31, 2009, or two months after the court rules on dispositive motions, or at a date thereafter as convenient to the Court's calendar |

18.   Trial:

The case will be tried to a jury. Plaintiffs anticipate a one-week trial.

19.   Disclosure of Non-party Interested Entities or Persons:

Pursuant to Civil L.R. 3-16, Plaintiffs certify that as of this date, other than the named parties, there is no such interest to report.

20.   Other Matters:

Not applicable.

1      OWEN, WICKERSHAM & ERICKSON, P.C.

2

3    Dated: December 26, 2007          By ____/ljk/_____
                                          Noel M. Cook
4                                         Linda Joy Kattwinkel

5                                         Attorneys For Plaintiff,
                                          SANRIO COMPANY, LTD. and
6                                         SANRIO, INC.

7

8                  **CASE MANAGEMENT ORDER**

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20

21       IT IS SO ORDERED.

22

23   Dated: _____       By _____
                                          HONORABLE VAUGHN R. WALKER
24                                        Chief Judge, U.S. District Court
                                          Northern District of California

25

26

27   S:\1Clients\SANRI\LITIGA\70014-PoshLife\CMCstatement.wpd

28

PLAINTIFFS' CASE MANAGEMENT STATEMENT          - 9-          No. C 07-05024 VRW

1

CERTIFICATE OF SERVICE

2

     I, Jill K. O'Hara, am employed in the City & County of San Francisco, State of California, am over the age of eighteen; and not a party to this action. My business address is 455 Market Street, 19th Floor, San Francisco, California 94105.

3

4

     I am readily familiar with the business practice at my place of business for processing of correspondence and documents by mail with the United States Postal Service, by overnight delivery through an overnight service, by personal delivery through a courier service, by facsimile, and/or by email.

5

6

     On the date below, I served the following document(s):

7

**PLAINTIFF'S CASE MANAGEMENT STATEMENT**

8

on the person(s) listed below:

9

Ms. Torri Butler Torres
Posh.Life
3449 Singleleaf Lane
Raleigh, NC 27616

10

11

admin@poshlifebeauty.com
poshlifebling@gmail.com

12

13

14

  _X_  BY U.S. MAIL:  Such correspondence was deposited, with postage fully prepaid, with the United States Postal Service at San Francisco, California, on the same day in the ordinary course of business.

15

16

  ___  BY OVERNIGHT DELIVERY:  Fully prepaid on the same day in the ordinary course of business.

17

18

  ___  BY PERSONAL SERVICE:  Such envelope was delivered by hand to the offices of the addressee.

19

  ___  BY FACSIMILE:  Such document was faxed to the above-identified facsimile number. Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error.

20

21

  _X_  BY EMAIL:  The document was transmitted via email in the form of .pdf attachment or other readable document.

22

     I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on December 26, 2007 at San Francisco, California.

23

24

25

_____
Jill K. O'Hara

26

27

S:\1Clients\SANRI\LITIGA\70014-PoshLife\POS.wpd

28